## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| GARY P. GREENE, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 15-00654-CG-N |
| | ) | |
| NOAH PRICE (TREY) OLIVER, III, | ) | |
| *et al.*, | ) | |
|     Defendants. | ) | |

## REPORT AND RECOMMENDATIONS

This action is before the Court on the second motion for leave to proceed without prepayment of fees and costs, or *in forma pauperis* ("IFP"), under 28 U.S.C. § 1915 (Doc. 14) filed by Plaintiff GARY P. GREENE in response to the Court's previous order entered November 7, 2016 (Doc. 12).   The motion has been referred to the undersigned Magistrate Judge for appropriate action in accordance with 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and S.D. Ala. GenLR 72(a). *See* S.D. Ala. GenLR 72(b); (Case docket, 11/22/2016 electronic reference).

Authority for granting a plaintiff permission to proceed without prepayment of fees and costs is found at 28 U.S.C. § 1915, which provides as follows:

> [Generally], any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

28 U.S.C. § 1915(a)(1).  "Despite the statute's use of the phrase 'prisoner possesses,' the affidavit requirement applies to all persons requesting leave to proceed IFP." *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1306 n.1 (11th Cir. 2004) (per curiam).

"The *in forma pauperis* statute, 28 U.S.C. § 1915, ensures that indigent persons will have equal access to the judicial system."  *Attwood v. Singletary*, 105 F.3d 610, 612-613 (11th Cir. 1997) (citing *Coppedge v. United States*, 369 U.S. 438, 446 (1962)).  However, "[t]here is no question that proceeding *in forma pauperis* is a privilege, not a right," *Camp v. Oliver*, 798 F.2d 434, 437 (11th Cir. 1986),[1] and "should not be a broad highway into the federal courts." *Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984) (per curiam).  Nevertheless, "while a trial court has broad discretion in denying an application to proceed *in forma pauperis* under 28 U.S.C.A. § 1915, it must not act arbitrarily and it may not deny the application on erroneous grounds."  *Pace v. Evans*, 709 F.2d 1428, 1429 (11th Cir. 1983) (per curiam) (citing *Flowers v. Turbine Support Div.*, 507 F.2d 1242, 1244 (5th Cir. 1975)); *see also Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1306-07 (11th Cir. 2004) (per curiam) ("[A] trial court has wide discretion in denying an application to proceed IFP under 28 U.S.C. § 1915.  This is especially true, the rubric goes, in civil

---

[1] *Accord Rivera v. Allin*, 144 F.3d 719, 722, 724 (11th Cir. 1998) ("Leave to proceed IFP is, and always has been, the exception rather than the rule. To commence a civil lawsuit in federal district court, the general rule is that initiating parties must prepay a filing fee… To be sure, proceeding IFP in a civil case is a privilege, not a right—fundamental or otherwise."), *abrogated on other grounds*, *Jones v. Bock*, 549 U.S. 199 (2007).

cases for damages, wherein the courts should grant the privilege sparingly. However, in denying such applications a court must not act arbitrarily. Nor may it deny the application on erroneous grounds." (quotation omitted)).

> When considering a motion filed pursuant to § 1915(a), "[t]he only determination to be made by the court ... is whether the statements in the affidavit satisfy the requirement of poverty." *Watson v. Ault,* 525 F.2d 886, 891 ([5]th Cir. 1976). An affidavit addressing the statutory language should be accepted by the court, absent a serious misrepresentation, and need not show that the litigant is "absolutely destitute" to qualify for indigent status under § 1915. *Adkins v. E.I. DuPont de Nemours & Co.,* 335 U.S. 331, 338–40, 69 S. Ct. 85, 88–89, 93 L. Ed. 43 (1948). Such an affidavit will be held sufficient if it represents that the litigant, because of his poverty, is unable to pay for the court fees and costs, and to support and provide necessities for himself and his dependents. *Id.* at 339, 69 S. Ct. at 89. In other words, the statute is not to be construed such that potential litigants are forced to become public charges or abandon their claims because of the filing fee requirements. *Id.* at 339–40, 69 S. Ct. at 89…The district court must provide a sufficient explanation for its determination on IFP status to allow for meaningful appellate review. *O'Neal v. United States,* 411 F.2d 131, 138 (5th Cir. 1969); *Phipps v. King,* 866 F.2d 824, 825 (6th Cir. 1988); *Besecker v. State of Ill.,* 14 F.3d 309, 310 (7th Cir. 1994) (per curiam).

*Martinez*, 364 F.3d at 1307 (footnotes omitted).

"A court may not deny an IFP motion without first comparing the applicant's assets and liabilities in order to determine whether he has satisfied the poverty requirement." *Thomas v. Chattahoochee Judicial Circuit*, 574 F. App'x 916, 917 (11th Cir. 2014) (per curiam) (unpublished)[2] (citing *Martinez*, 364 F.3d at 1307-08). "The question under 28 U.S.C. § 1915 is whether the litigant is 'unable to pay' the

---

[2] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2 (effective Dec. 1, 2014). *See also Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007) ("Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants.").

costs, and the answer has consistently depended in part on [the] litigant's actual ability to get funds from a spouse, a parent, an adult sibling, or other next friend." *Williams v. Spencer*, 455 F. Supp. 205, 209 (D. Md. 1978); *see Fridman v. City of New York*, 195 F. Supp. 2d 534, 537 (S.D.N.Y. 2002) ("In assessing an application to proceed *in forma pauperis*, a court may consider the resources that the applicant has or 'can get' from those who ordinarily provide the applicant with the 'necessities of life,' such as 'from a spouse, parent, adult sibling or other next friend.' . . . If it appears that an applicant's 'access to [ ] court has not been blocked by his financial condition; rather [that] he is "merely in the position of having to weigh the financial constraints imposed if he pursues [his position] against the merits of his case,'" then a court properly exercises its discretion to deny the application."); *Sellers v. United States*, 881 F.2d 1061, 1063 (11th Cir. 1989) (per curiam) (funds "derived from family sources" are relevant to IFP determination); *Wilson v. Sargent*, 313 F.3d 1315, 1319-20 (11th Cir. 2002) (per curiam) (same).[3] "Federal Courts have

---

[3] Most cases considering the ability of someone else to pay these costs for a putative pauper focus on whether those costs can be borne by a close family member—such as a spouse, parent, an adult sibling, or other next friend. *E.g., Williams*, 455 F. Supp. at 209; *see also Pisano v. Astrue*, Civil Action No. 11–30269–KPN, 2012 WL 79188, at *2 (D. Mass. Jan. 10, 2012) ("A number of courts have come to the same conclusion that the income and resources of a spouse, if not other close family members as well, are relevant to the determination of indigency under 28 U.S.C. § 1915.") (collecting cases); *but see Fridman*, 195 F. Supp. 2d at 537 ("In assessing an application to proceed *in forma pauperis*, a court may consider the resources that the applicant has or 'can get' from ***those who ordinarily provide the applicant with the 'necessities of life,'*** such as 'from a spouse, parent, adult sibling or other next friend.'" (emphasis added)), *Ginters v. Frazier*, Civ. No. 07-4681 (JMR/RLE), 2008 WL 314701, at *2 n.1 (D. Minn. Feb. 4, 2008) ("Federal Courts have frequently recognized that, for purposes of determining IFP eligibility, it is appropriate to consider any support that an IFP applicant might receive from a spouse, or from

frequently recognized that, for purposes of determining IFP eligibility, it is appropriate to consider any support that an IFP applicant might receive from a spouse, or from **any other individual**." *Ginters v. Frazier*, Civ. No. 07-4681 (JMR/RLE), 2008 WL 314701, at *2 n.1 (D. Minn. Feb. 4, 2008) (emphasis added); *accord Fridman*, 195 F. Supp. 2d at 537; *Williams*, 455 F. Supp. at 208-09; *Akkaraju v. Ashcroft*, No. 03 C 6447, 2003 WL 22232969, at *1 (N.D. Ill. Sept. 26, 2003) ("In evaluating the funds available to *in forma pauperis* movants, courts may consider the income or resources of interested persons, such as spouses and parents." (citation omitted)).

The representations in Greene's second IFP motion (Doc. 14), which is in substantial compliance with 28 U.S.C. § 1746 and thus constitutes an unsworn declaration under penalty of perjury, reflect that he is single with no dependents. He is unemployed and reports no past employment.  He receives no welfare aid and owns no real property or other major assets (e.g., automobiles, motor homes, etc.). He reports no cash in banks, savings, etc., and no monies received by him, or held by others for him, in the last 12 months.  He reports no debts or obligations.  He reports that he provides for his basic living needs through "food stamps" and "family assistance," though he does not provide an estimated monthly amount received for either.

---

**any other individual**." (emphasis added)), *and Akkaraju v. Ashcroft*, No. 03 C 6447, 2003 WL 22232969, at *1 (N.D. Ill. Sept. 26, 2003) ("In evaluating the funds available to *in forma pauperis* movants, courts may consider the income or resources of **interested persons**, such as spouses and parents." (citation omitted and emphasis added)).

Upon consideration of Greene's second IFP motion (Doc. 14), the undersigned finds that he qualifies for indigent status. *See Martinez*, 364 F.3d at 1307 (one need not be "'absolutely destitute' to qualify for indigent status under § 1915"). However, as was explained in the Court's November 7, 2016 order (Doc. 12), despite his subsequent release from confinement Greene is still subject to the filing-fee provision of the Prison Litigation Reform Act ("PLRA") of 1995 because he commenced this action while he was a prisoner. *Gay v. Tex. Dep't of Corr. State Jail Div.*, 117 F.3d 240, 242 (5th Cir. 1997) (citing *Robbins v. Switzer*, 104 F.3d 895, 897–98 (7th Cir.1997). *See also Harris v. Garner*, 216 F.3d 970, 972-76 (11th Cir. 2000) (en banc) (favorably citing *Gay* in analyzing a different portion of the PLRA).

> 28 U.S.C. § 1915(b)(1) provides that "if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee." This obligation, however, applies to both prisoner and non-prisoner *ifp* litigants. *See Robbins v. Switzer*, 104 F.3d 895, 898 (7th Cir. 1997) ("Section 1915(b)(1) says that prisoners are liable for the full fees, but so is every other person who proceeds *in forma pauperis*; all § 1915(a) does for any litigant is excuse the pre-payment of fees. Unsuccessful litigants are liable for fees and costs and must pay when they are able."). Unlike non-prisoner *ifp* litigants, prisoners, while incarcerated, are required to make payments according to the scheme set forth in § 1915(b). Thus, [the Plaintiff] should have paid an initial partial … filing fee calculated according to the formula set forth in 28 U.S.C. § 1915(b)(1). While he was incarcerated, he should have also paid additional amounts calculated pursuant to § 1915(b)(2) on the basis of his monthly income from the time he [brought] his [civil action] to the time of his release from incarceration.

*Brown v. Eppler*, 725 F.3d 1221, 1230 (10th Cir. 2013).

The record reflects that the Court received Greene's initial partial filing fee on January 22, 2016, while he was still confined. (Doc. 4). However, the record

does not contain any indication of when Greene was released from confinement, nor does it contain information that would permit the Court to determine what "additional amounts calculated pursuant to § 1915(b)(2)"[4] he would have owed prior to his release.[5] *Brown*, 725 F.3d at 1230. "If th[is civil action is] to continue, [Greene] must pay the amounts that according to the trust account statements he could have paid at the time he [brought the action] (and before his release). A dismissal for failure to pay that sum would not offend § 1915(b)(4); it would simply

---

[4] "After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2).

[5] *Cf. Robbins*, 104 F.3d at 898 ("Robbins was a prisoner and readily could have complied with § 1915(b)(1) when he filed his notices of appeal. He did not. After we issued orders requiring him to provide copies of the prison trust accounts and make partial payments, he responded that he had been released and is penniless. He did not, however, provide the copies of the prison trust account statements we directed him to supply, or an affidavit showing his current resources and income. For all this record reveals, the accounts contained ample funds at the time he filed the appeals, but were paid over to him on his release and spent on other things … Although he is now out of prison, the data pertinent to his prison accounts did not vanish (the prison likely gave him a closing statement when he left); the information still can be supplied. So, for example, if according to the trust account statements Robbins could (and therefore should) have paid $50 at the time he filed his appeals, and the trust accounts received no income before his release, then he must pay $50 now and may apply for *forma pauperis* status on the balance. How much Robbins actually must prepay depends on the application of the formula in § 1915(b) to the balances and income of his trust account through the day of his release."); *Brown*, 725 F.3d at 1231 ("[S]hortly after filing his notice of appeal, Brown moved to make payments of the appellate filing fee in monthly, twenty-dollar installments and provided the required trust account information to the district court. Brown also provided the relevant trust account information to this court in conjunction with his motion to proceed *ifp*. In light of the unusual circumstances of this matter, on remand the district court should exercise its discretion to determine the amount of the outstanding fee obligation, i.e., the amount which should have been assessed under § 1915(b) prior to Brown's release from prison, and terms pursuant to which Brown may pay it.").

enforce the obligation created by § 1915(b)(1). The [PLRA]'s effectiveness would be eroded if, during their final year of custody, prisoners could file suits and appeals without considering the financial consequences, planning to ignore the statute while in custody, divert trust account funds to other purposes, and plead poverty once released. Under the Act, release does not eliminate an obligation that could and should have been met from the trust account while imprisonment continued." *Robbins*, 104 F.3d at 899.

Thus, by order entered December 5, 2016, the undersigned directed Greene "to file with the Court, no later than **Tuesday, December 27, 2016**, information demonstrating the monthly income credited to Greene's prison trust accounts from January 2016 (the date he paid the initial partial filing fee) through the date he was released from confinement." (Doc. 15 at 8). Greene was expressly warned that his "failure to comply with this Order within the prescribed time or to notify the Court of a change in address will result in a recommendation of dismissal of this action for failure to prosecute and to obey the Court's Order and/or § 1915(b)." (*Id.*). The December 5, 2016 order sent to Greene has not been returned to the Court as undeliverable, and to date Greene has filed nothing in response to that order.

Accordingly, the undersigned **RECOMMENDS** that this action be **DISMISSED without prejudice** *sua sponte* for Greene's failure to make the required payments under 28 U.S.C. § 1915(b) or, alternatively, for failure to prosecute and obey the Court's orders under both Federal Rule of Civil Procedure

41(b) and the Court's inherent authority to manage its docket, and that final judgment be entered accordingly under Federal Rule of Civil Procedure 58.[6]

### Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law.   Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P 72(b); S.D. Ala. GenLR 72(c).   The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate

---

[6]     There are two possible sources of authority for a district court to dismiss an action for a plaintiff's failure to prosecute or to obey the Court's orders: Federal Rule of Civil Procedure 41(b), or the Court's inherent power to manage its docket. *Betty K Agencies, Ltd. v. M/V MONADA,* 432 F.3d 1333, 1337 (11th Cir.2005). "Rule 41(b) provides: 'For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him.' "  *Id.* "The Supreme Court also has held that '[t]he authority of a court to dismiss *sua sponte* for lack of prosecution has generally been considered an "inherent power," governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs....' " *Id.* (quoting *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630 (1962)).

"Where dismissal [under Rule 41(b) ]is without prejudice, but the applicable statute of limitations probably bars further litigation, the standard of review of the District Court's dismissal should be the same as is used when reviewing a dismissal with prejudice." *Boazman v. Econ. Lab., Inc.,* 537 F.2d 210, 213 (5th Cir.1976) (citing *Pond v. Braniff Airways, Inc.,* 453 F.2d 347 (5th Cir.1972)).   Here, Greene's claims under 42 U.S.C. § 1983 arise from events allegedly occurring on September 28, 2015.   (*See* Doc. 1 at 4).     Thus, the two-year statute of limitations on such claims has not yet passed.   *See Powell v. Thomas*, 643 F.3d 1300, 1303 (11th Cir. 2011) (per curiam) (" 'All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought.'   *Crowe v. Donald,* 528 F.3d 1290, 1292 (11th Cir.2008) (quotation omitted).   In Alabama, … that limitations period is two years.  *See Jones v. Preuit & Mauldin,* 876 F.2d 1480, 1483 (11th Cir. 1989) ('[T]he two-year limitations period ... applies to section 1983 actions in Alabama.').").

judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 8th day of February 2017.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**